CHARLES DWIGHT EHRENSPERGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ehrensperger v. Commissioner
Docket No. 12992-90
United States Tax Court
T.C. Memo 1994-279; 1994 Tax Ct. Memo LEXIS 284; 67 T.C.M. (CCH) 3106; June 20, 1994, Filed *284 Decision will be entered under Rule 155. Charles Dwight Ehrensperger, pro se. For respondent: Valerie N. Larson, FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in Federal income tax and additions to tax for petitioner and his deceased spouse [1] as follows: Additions to tax Sec.
Sec.
Sec.
Sec. Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6661 1983
$ 6,948
$ 1,737
$ 347
[1] $ 1,737
1984
5,011
1,253
251
[1] 1,253
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. *285 After concessions by the parties, [2] the remaining issues [3] are: (1) Whether petitioner is entitled to deduct $ 18,003 for home mortgage interest for 1983. We hold that he is entitled to a deduction of only the $ 16,138 allowed by respondent. (2) Whether petitioner is entitled to deduct $ 4,738 for accounting services and tax return preparation for 1983. We hold that he is entitled to a deduction of only the $ 425 allowed. (3) Whether petitioner is entitled to deduct $ 10,200 for legal and professional services for 1984. We hold that he is not. (4) Whether petitioner is entitled to deduct losses in excess of the amounts allowed by respondent from several partnerships for 1983 and 1984. We hold that he is not. (5) Whether petitioner realized income from forgiveness of indebtedness upon dissolution of one of the partnerships in 1984. We hold that he did. (6) Whether petitioner is liable for additions to tax under section 6651(a)(1) for failure to timely file income tax returns for 1983 and 1984. We hold that he is. (7) Whether petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a)(1) and (2) for *286 1983 and 1984. We hold that he is. (8) Whether petitioner is liable for the addition to tax under section 6661 for 1983. We hold that he is. *287 FINDINGS OF FACT General
Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by reference. Petitioner resided in San Diego, California, when the petition was filed. On August 16, 1984, petitioner filed a joint U.S. Individual Income Tax Return for 1983, reporting no tax liability. [4]
On October 16, 1985, petitioner filed a joint return for 1984, reporting no tax liability. Home Mortgage Interest Deduction
On the 1983 return, petitioner deducted $ 18,003 for home mortgage interest. In the statutory notice of deficiency, respondent allowed only $ 16,138 of the interest on the ground that petitioner did not establish that any greater amount was paid on an obligation on which he was "legally liable". Accounting Fees Deduction
*288 On the 1983 return, petitioner also claimed deductions for accounting services and a tax return preparation fee totaling $ 4,738. In the deficiency notice, respondent allowed $ 425 as a deduction for a tax return preparation fee and no deduction for accounting services on the ground that petitioner did not show that he incurred or paid any greater amount. Legal Fees Deduction
On the 1984 return, petitioner also deducted $ 10,200 for legal and professional services. In the deficiency notice, respondent disallowed the deduction for the reason that petitioner did not establish it was paid or, if paid, it was for ordinary and necessary business purposes. Partnerships
1. 1983
On the 1983 return, petitioner deducted losses from partnerships as follows: Partnership Name
Amount
A & E Investment Management (A & E)
($ 13,775)
Razorback Equities Ltd. (Razorback)
(21,166)  Uniwai Orchids II
(25,530)  Total  ($ 60,471)
Petitioner testified that Uniwai Orchids II was in the business of growing orchids in Hawaii, and the other partnerships were "involved in real estate." a. A & E
Petitioner's Schedule K-1 for A & E for 1983 (1) indicates that he *289 was a general partner with a 50-percent interest, (2) reflects a negative capital account of $ 3,724 at the beginning of the year and $ 17,499 at the end and a distributive share of ordinary loss of $ 13,775, and (3) shows no contribution to capital during the year. The lines for partner's share of liabilities state: "NA". [5]
b. Razorback
Petitioner's Schedule K-1 for Razorback for 1983 (1) indicates that he was a limited partner with a 1.96-percent interest, (2) reflects a negative capital account of $ 20,890 at the beginning of the year and $ 31,556 at the end and a distributive share of ordinary loss of $ 21,166, and (3) shows a capital contribution of $ 10,500 during the year. The line for *290 partner's share of nonrecourse liabilities shows $ 164,640; the line for partner's share of other liabilities is blank. c. Uniwai Orchids II
Petitioner's Schedule K-1 for Uniwai Orchids II for 1983 (1) indicates that petitioner was a limited partner with an interest of less than 10 percent, (2) reflects a capital account of zero at the beginning of the year and a negative capital account of $ 16,930 at the end and a distributive share of ordinary loss of $ 25,530, and (3) a capital contribution of $ 8,600 during the year. The line for partner's share of nonrecourse liabilities has no entry; the line for partner's share of other liabilities reflects $ 21,500. d. Respondent's Determinations
In the deficiency notice, respondent disallowed the deductions of losses from A & E and Razorback for 1983 and reduced the deduction for loss from Uniwai Orchids II to $ 8,600. The reason for each disallowance is: "you have not established that you sustained any such deductible loss during the year." 2. 1984
On the 1984 return, petitioner deducted losses from partnerships as follows: Partnership Name
Amount
C & F Properties (C & F)
($ 59,375)
Razorback
(18,320)  Uniwai Orchids I
(3,961)   Uniwai Orchids II
(8,072)   Total  ($ 89,728)
*291 a. C & F
Petitioner's Schedule K-1 for C & F for 1984 (1) indicates that he was a general partner with a 50-percent interest, (2) reflects a negative capital account of $ 18,247 at the beginning of the year and $ 47,934 at the end and a distributive share of ordinary loss of $ 31,704 [6] and (3) shows no contribution to capital during the year. The lines for partner's share of liabilities state: "NA". Petitioner testified that C & F owned property and was involved in real estate. C & F was dissolved during 1984. b. Razorback
Petitioner's Schedule K-1 for Razorback for 1984 (1) reflects a negative capital account of $ 31,556 at the beginning of the year and $ 41,876 at the end and a distributive share of ordinary loss of $ 18,320, *292 and (2) shows a capital contribution of $ 8,000 during the year. The line for partner's share of nonrecourse liabilities reflects $ 164,640; the line for partner's share of other liabilities is blank. Razorback was dissolved during 1984. c. Uniwai Orchids I
Petitioner's Schedule K-1 for Uniwai Orchids I for 1984 (1) indicates that he was a limited partner with an interest of less than 5 percent, (2) reflects a capital account of $ 3,159 at the beginning of the year and a negative capital account of $ 1,323 at the end and a distributive share of ordinary loss of $ 3,961, and (3) shows withdrawals and distributions of $ 521. The lines for partner's share of liabilities are both blank. Petitioner testified that Uniwai Orchids I was in the business of growing orchids. Uniwai Orchids I was dissolved during 1984. d. Uniwai Orchids II
Petitioner's Schedule K-1 for Uniwai Orchids II for 1984 (1) reflects a negative capital account of $ 16,930 at the beginning of the year and $ 25,002 at the end and a distributive share of ordinary loss of $ 8,072, and (2) shows no contribution to capital during the year. The line for partner's share of other liabilities reflects $ 21,500; *293 the line for partner's share of nonrecourse liabilities has no entry. Uniwai Orchids II was dissolved during 1984. e. Respondent's Determinations
In the deficiency notice, respondent disallowed the deductions of losses from C & F and Uniwai Orchids II for 1984 and reduced the deductions for losses from Razorback and Uniwai Orchids I to $ 7,610 and $ 2,638, respectively. The reason for each disallowance is: "you have not established that you sustained any such deductible loss during the year." Respondent also increased petitioner's income for 1984 by $ 18,247, stating that it "represents the negative balance of your capital account" in C & F. Proceedings
On May 23, 1991, this case was first set for trial at the trial session beginning on October 28, 1991. On August 19, 1991, respondent filed a request for admissions. On October 28, 1991, petitioner filed a motion for continuance stating that petitioner had lost his job and had to place his records and materials required for trial in storage. The motion was granted. On December 3, 1991, the case was set for trial at the trial session beginning on May 4, 1992. On February 3, 1992, respondent filed a second request *294 for admissions. At the calendar call, respondent's counsel represented that petitioner had failed to respond to either request for admissions or to other attempts to obtain documents to support petitioner's positions. Petitioner represented that his records were "tied up in an FDIC court case against the bank that did the lending" and agreed to present the documents to respondent by June 3, 1992. The Court warned petitioner that, if there was no progress by June 3, 1992, a motion to dismiss for failure to properly prosecute would be granted. The Court ordered the parties to file status reports by June 3, 1992. On June 8, 1992, respondent filed a status report indicating that petitioner had not produced any documents, and also filed a motion to dismiss for lack of prosecution. In a June 16, 1992, conference call, the Court instructed the parties to engage in negotiated discussion regarding substantiation of the items in issue and informed the parties that respondent's motion to dismiss would be held under advisement. By Order dated June 17, 1992, the Court directed the parties to file status reports by July 8, 1992. On July 6, 1992, respondent filed a status report conceding *295 one issue and indicating that petitioner "will obtain cancelled checks" and other documents to substantiate deductibility of the various expenses and losses claimed, including substantiating basis in each partnership. By Order dated July 9, 1992, the Court ordered that the parties file status reports by July 27, 1992. On July 27, 1992, respondent filed a status report indicating that petitioner had not yet provided the canceled checks and other documents but had notified respondent that he was in "contact with FDIC and has requested access to his files in order to provide respondent with documents to establish his basis in various partnerships". On July 28, 1992, petitioner filed a status report dated July 27, 1992 indicating that he would file a formal, written request to the "FDIC" for his records. By Order dated July 31, 1992, the Court ordered the parties to file status reports by September 14, 1992. On September 14, 1992, each of the parties filed a status report. Respondent's status report indicated (1) that petitioner had provided the 1983 Form 1065 for A & E and (2) that respondent was advised that petitioner had stated that that would be the only document he would produce *296 to establish his basis in A & E, and further indicated that petitioner had not advised respondent as to what progress he had made toward obtaining documents to substantiate his deductions and losses. Petitioner's status report stated that respondent asked for documents to establish his investment, and the Form 1065 for A & E for 1983 provides that information and is supported by "a professional CPA". By Order dated September 23, 1992, the Court ordered the parties to file status reports by December 1, 1992, discussing availability for trial. On November 30, 1992, respondent filed a Status Report indicating that since the calendar call petitioner had not provided any documents to substantiate the deductions and losses at issue. On May 26, 1993, respondent filed a second motion to dismiss for lack of prosecution. We denied both of respondent's motions. By Order dated March 1, 1993, the case was set for trial at a special session beginning on June 8, 1993, and it was tried on that date. OPINION General
Petitioner argues generally that his records are "in the possession of the FDIC", and respondent has "not made any effort known to Petitioner to help get them released." *297 In her arguments regarding each issue, respondent contends that petitioner has failed to produce any evidence or documents supporting his positions. We agree with respondent that the burden of persuasion remained with petitioner, and he failed to substantiate (1) the deductions claimed and basis of petitioner's interests in each of the partnerships for which he claimed losses, or (2) that he did not have income on the dissolution of C & F in 1984. Petitioner bears the burden of proving that respondent's determinations in the deficiency notice are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This includes the burden of substantiation. See Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Section 6001 requires taxpayers to maintain adequate records from which their correct tax liability may be determined. Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989). A taxpayer must substantiate the amounts claimed as deductions or losses, and if he does not, the Commissioner is not arbitrary or *298 unreasonable in denying the deductions or losses. Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974). A taxpayer's inability to produce records does not relieve him of his burden of persuasion but merely "alters the type of evidence which may be offered to establish a fact". Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); see also American Police & Fire Found., Inc. v. Commissioner, 81 T.C. 699, 706 (1983). In his motion to continue filed October 28, 1991, petitioner indicated that his records were in storage. At the May 4, 1992, calendar call, he represented that his records were "tied up in an FDIC court case" and agreed to present the documents to respondent by June 3, 1992. In subsequent status reports to the Court, petitioner stated that he was in contact with the "FDIC" to obtain his records. The Court provided petitioner with over a year and a half to obtain his records from the date the case was first scheduled for trial to the date the trial commenced. [7]
*299 Petitioner did not present any substantiating records but only provided the returns for his spouse and him, a Form 1065 for A & E, and Schedules K-1 for each of the partnerships. The entries on the returns of petitioner and his spouse are not evidence to establish the truth of the matters set forth therein but merely a statement of their claim. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, supra at 837. He did not present any canceled checks, nor did he explain why he had not subpoenaed his records or any witnesses (such as a representative of the Federal Deposit Insurance Company (the FDIC) with custody of the records, his accountant, or the legal advisers he referred to at trial) pursuant to Rules 147(a) and (b). Specific Issues
1. Home Mortgage Interest Deduction
At trial, petitioner testified, and on brief asserts, that the home mortgage interest disallowed by respondent relates to a third trust deed, the records regarding which are in the custody of the FDIC because the mortgage was administered through a failed bank's trust department. Respondent contends that *300 petitioner has failed to substantiate his entitlement to a deduction for home mortgage interest greater than the $ 16,138 allowed by respondent. We agree with respondent. On brief, petitioner states that he has found "the actual Escrow Closing Statement proving the existence of a 3rd TD". This is too little too late. Petitioner bears the burden of persuasion and has not substantiated his entitlement to a greater deduction than the $ 16,138 allowed by respondent. Thorpe v. Commissioner, T.C. Memo. 1992-160. 2. Accounting Fees Deduction
Respondent contends similarly that petitioner did not substantiate the accounting fees disallowed and that petitioner's testimony at trial indicated that they may have related to services for his wholly owned corporation. Petitioner mentions the accounting fees in passing in his brief and argues only that the records in the custody of the FDIC would establish "the complexity and necessity and actuality" of the accounting services. We agree with respondent that petitioner has failed to show his entitlement to more than the $ 425 allowed by respondent as a tax return preparation fee deduction. As stated above, *301 we fail to understand why petitioner did not have the accountant testify. [8]
3. Legal Fees Deduction
At trial, petitioner testified that he had a canceled check for $ 20,000 for legal expenses, rather than the $ 10,200 claimed on the 1984 return, and on brief, he states that he uncovered a monthly bank statement reflecting the check. Respondent contends that petitioner failed to substantiate that he was entitled to expend any amount for legal expenses. We agree with respondent, see Thorpe v. Commissioner, supra, and again do not understand why petitioner did not call the attorney who provided the services as a witness and subpoena his records to support petitioner's position or present any other documentation of the payment. 4. Partnerships
a. Losses
For 1983, respondent argues that petitioner *302 is not allowed any loss from A & E or Razorback because he had a negative capital account and zero basis as to each, and that he is allowed only $ 8,600 of his $ 25,530 distributive share of loss from Uniwai Orchids II, which is equal to the amount of his capital contribution reflected on the Schedule K-1. For 1984, respondent contends that petitioner is not allowed any loss from Uniwai Orchids II or C & F because he had a negative capital account and zero basis as to each; that he is allowed only $ 2,638 of his $ 3,961 distributive share of loss relating to Uniwai Orchids I, which was computed by deducting a $ 521 capital distribution from his opening capital account balance of $ 3,159, as reflected on the Schedule K-1; and that he is allowed only $ 7,610 of his $ 18,320 distributive share of loss relating to Razorback, which was computed by increasing petitioner's alleged negative opening capital account of $ 10,390 by his alleged capital contribution of $ 18,000. [9]
*303 On brief, respondent maintains further that, except for the Schedules K-1 for each of the partnerships: The petitioner failed to provide any documentation which would support an increase in his bases due to either an increase in his share of partnership liabilities or the assumption of partnership liabilities. Thus due to the petitioner's total lack of substantiation as to his distributive share, adjusted basis, nonrecourse obligations, recourse liabilities, or business purpose of the partnerships, his loss should be limited to the amounts determined by the respondent.
Although it is not clear, petitioner appears to contend that he is entitled to losses in excess of his "numerical totals of invested dollars" in the partnerships because he assumed liability for loans relating to them, the passive loss rules [10] did not apply for the years in issue, and he is entitled to a "carry-forward". *304 We agree with respondent that petitioner has failed to substantiate that he is entitled to greater partnership losses than allowed by respondent because he has failed to substantiate his share of liabilities in each. Section 704(d) provides that a partner may deduct his distributive share of partnership loss only to the extent of the adjusted basis of his interest in the partnership at the end of the year in which the loss occurred. The basis of a partnership interest acquired by a contribution is the amount of money or adjusted basis of other property contributed to the partnership at the time of the contribution, increased by the amount of gain, if any, recognized by the contributing partner. Sec. 722. In relevant part, section 705(a) provides that the adjusted basis of a partner's interest in a partnership is the basis determined under section 722, (1) increased by the partner's distributive share of partnership income for the tax year and prior years and (2) decreased (but not below zero) by distributions from the partnership under section 733 and by his distributive share of partnership losses for the tax year and prior years. Additionally, an increase in a partner's share *305 of partnership liabilities or the partner's assumption of partnership liabilities is treated as a contribution of money to the partnership (thus increasing basis), see sec. 752(a), and a decrease in a partner's share of partnership liabilities or the assumption of the partner's liability by the partnership is treated as a distribution of money from the partnership (thus decreasing adjusted basis), see sec. 752(b). For 1983, respondent determined that petitioner had an adjusted basis of zero in his interests in (1) A & E, as to which the Schedule K-1 reflected negative capital accounts at the beginning and end of 1983 (presumably caused by partnership losses or distributions) and no contribution to capital, and (2) Razorback, as to which the Schedule K-1 reflected negative capital accounts of $ 20,890 and $ 31,556 for the beginning and end of the year, respectively, and a contribution to capital of $ 10,500. Respondent determined that petitioner had an adjusted basis of $ 8,600 for Uniwai Orchids II because the Schedule K-1 shows a beginning capital account of zero and a contribution to capital of $ 8,600. See sec. 722. Respondent then allowed partnership losses only to the extent *306 of petitioner's respective adjusted bases so determined. The only evidence presented by petitioner to support his share of liabilities in any of the partnerships was the Form 1065 for A & E and the Schedule K-1 for each. This is not sufficient to meet his burden of persuasion. According to respondent's status reports, petitioner repeatedly promised to provide documents substantiating his basis in each partnership. Petitioner was aware that he needed to substantiate the extent of his share of liabilities; indeed, he argues on brief that his investment in the partnerships included assumed liabilities for loans. Although any share of partnership liabilities would be included in the adjusted basis of a partner's partnership interest, and not merely an increase in the liabilities for the year, only the Schedules K-1 for Razorback and Uniwai Orchids II state that he had a share of liabilities. We do not consider the Schedules K-1 alone sufficient to establish that petitioner, as a limited partner, had the stated share of liabilities. Thus, petitioner has not shown that respondent's determination regarding the adjusted bases and disallowance of partnership losses is erroneous. We *307 agree with petitioner that the passive loss rules of section 469 do not apply to the years in issue. We do not have later years before us for purposes of deciding whether petitioner is entitled to "carry-forward" partnership losses. Neither argument affects our conclusion. b. Dissolution of C & F
Respondent contends that petitioner realized income to the extent of $ 18,247 in 1984 when C & F dissolved because he was "relieved of an unconditional obligation to restore a deficit capital account balance" in that amount. Petitioner did not present evidence or make a specific argument regarding this issue other than to contend that his records were in the custody of the FDIC. We agree with respondent that petitioner has failed to meet his burden of showing that he did not realize income to the extent determined by respondent. [11]Rule 142(a); Simons v. Commissioner, T.C. Memo. 1987-270, affd. without published opinion 851 F.2d 361 (9th Cir. 1988). *308 5. Additions to Tax
Respondent contends that petitioner did not timely file the returns for each of the years in issue, did not submit evidence establishing reasonable cause for his failure to do so, and is liable for the additions to tax under section 6651(a)(1) for each year. Petitioner did not submit evidence or make any argument regarding this addition to tax. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition equals 5 percent of the tax required to be shown on the return for the first month, with an additional 5 percent for each additional month or fraction of a month during which the failure to file the return continues, not to exceed a maximum of 25 percent. The burden of showing reasonable cause rests with petitioner. Rule 142(a). Section 6072(a) requires that returns made on the basis of the calendar year be filed by the 15th day of April following the close of the year. Petitioner filed the returns for 1983 and 1984 on August 16, 1984, and October 16, 1985, respectively. Both returns reported no tax due. He has *309 not presented evidence that an extension of time for filing was sought for either year or made an argument regarding reasonable cause for the untimely filing. Thus, we sustain respondent's determination that he is liable for the additions to tax under section 6651(a)(1) for each of the years in issue. Section 6653(a)(1) provides for an addition to tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) imposes a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to the negligence for taxes due after December 31, 1981. Negligence is the lack of due care or the failure to do what a prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of establishing that the negligence additions to tax do not apply. Petitioner has not presented any evidence in the context of this late filing situation which indicates the existence of an adequate and reasonable excuse or justification for the delinquent filing of the 1983 and 1984 returns. See Emmons v. Commissioner, 92 T.C. 342 (1989), *310 affd. 898 F.2d 50 (5th Cir. 1990). Nor has he presented any evidence to overcome respondent's determination of negligence.[12] We conclude that he has failed to carry his burden of showing that there was no negligence or intentional disregard of rules and regulations. Thus, petitioner is liable for the additions to tax under section 6653(a)(1) and (2) determined by respondent for 1983 and 1984. Section 6661 provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). *311 The amount of the understatement is the excess of tax required to be shown on the return over the amount of the tax shown on the return; where no tax is reported, this amount is equal to the deficiency. Sec. 6661(b)(2); Woods v. Commissioner, 91 T.C. 88, 94-95 (1988). Under section 6661(b)(1)(A), for individual taxpayers, a substantial understatement must exceed the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. The amount of the understatement is reduced by the portion of the understatement attributable to the tax treatment of any item if there is substantial authority for the return position regarding the item or adequate disclosure of the relevant facts affecting treatment of the item in the return or a statement attached to it. Sec. 6661(b)(2)(B). However, the Commissioner may waive all or part of this addition to tax if there was reasonable cause for the understatement, and the taxpayer acted in good faith. Sec. 6661(c). Petitioner failed to substantiate the deductions claimed and basis of his interests in the partnerships for which he claimed losses for 1983. Given his failure, he did not explain the substantial *312 authority or adequacy of the disclosure on the return. Although the copy of the 1983 return in the record bears the stamp of a return preparer, see supra note 4, it is not signed. Additionally, the record does not indicate the professional qualification of the return preparer or what information he was furnished. Cf. Allen v. Commissioner, 925 F.2d 348, 354 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Thus, we conclude that petitioner is liable for the addition to tax under section 6661 for 1983. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Barbara Hayes Ehrensperger apparently passed away between the dates the return for 1984 was filed and the statutory notice of deficiency was sent.↩
1. 50 percent of the interest due on the portion of the under-payment attributable to negligence, which respondent determined to be the full deficiency amounts.↩
2. For 1984, respondent conceded a $ 10,000 adjustment for unreported commissions and the addition to tax under sec. 6661. Additionally, the parties stipulated that, for 1984, petitioner was in error in reporting $ 78,791 in income from the Estate of Edward C. Ehrensperger. For 1984, petitioner reported wages of $ 6,150, which respondent increased by $ 100 in the statutory notice of deficiency. This adjustment is consistent with Forms W-2 for petitioner and his spouse, and petitioner did not present any evidence or make any evidence or make any argument on brief relating to this adjustment. We consider it to have been conceded by petitioner. Stemkowski v. Commissioner, 76 T.C. 252, 312 (1981), affd. in part, revd. in part and remanded 690 F. 2d 40 (2d Cir. 1982); Atlee v. Commissioner, 67 T.C. 395, 396↩ n.2 (1976).
3. The deficiency notice also included derivative adjustments to self -- employment tax and the earned income credit for 1984. The $ 2,068 amount of the self-employment tax appears to be computed incorrectly and will presumably be corrected in the Rule 155 computation.↩
4. The copy of the 1983 return in the record bears the name, address, Social Security number, and employer identification number of an accounting firm as return preparer, but no preparer's signature.↩
5. The Schedule L. of the 1983 Form 1065, U.S. Partnership Return of Income, for A & E shows nonrecourse loans of $ 174,363 and $ 190,926 for the beginning and end of the year, respectively. There is no explanation in the record for why the Schedule K-1 states "NA" on the lines for petitioner's share of liabilities.↩
6. Box C. of sec. E, Reconciliation of partner's capital account, shows ordinary loss as $ 29,687 without explanation reconciling the two amounts. The discrepancy between the loss deducted on the return and the amount reported on the Schedule K-1 is also not explained.↩
7. In his brief, petitioner asks the Court to delay deciding several issues, assign resolution of these issues to an Internal Revenue Service "staff person" not in the office of District Counsel, "requests the continued assistance of the Court", and proposes that this be permitted for a 90-day "experimental period" during which he proposes to file monthly progress reports. This case was submitted at the end of the trial. As noted, the Court provided petitioner with over a year and a half to obtain his records. To the extent that petitioner is informally requesting that the Court reopen the record, we decline to do so under the circumstances.↩
8. At trial, petitioner testified that he owed his C.P.A. money, but that does not explain why he did not call the C.P.A. as a witness to corroborate the fee claimed.↩
9. Respondent's brief states that the amount of the 1984 capital contribution was $ 18,000. There is no explanation for why this differs from the $ 8,000 capital contribution shown on the 1984 Schedule K-1 for Razorback Equities Ltd. (Razorback). The effect benefits petitioner by allowing him a greater amount of adjusted basis in his partnership interest in, and loss from, Razorback.↩
10. Petitioner appears to be referring to sec. 469, which was added to the Code by sec. 501 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2233-2241, and generally applies to tax years beginning after 1986.↩
11. Although a dissolution for State law purposes is not necessarily treated as a termination for purposes of sec. 708(b)(1)(B), see Requard v. Commissioner, T.C. Memo. 1966-141↩, petitioner has not shown nor argued that C & F was not terminated on its dissolution.
12. Although the copy of the 1983 return in the record bears the stamp of a return preparer, see supra note 4, it is not signed. The record does not indicate the professional qualification of the return preparer or the information he was furnished. See Allen v. Commissioner, 925 F.2d 348, 354 (9th Cir. 1991), affg. 92 T.C. 1↩ (1989).