**Morris A. WEINER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A.H–00–1297.**

United States District Court, S.D. Texas, Houston Division.

Nov. 20, 2002.

See also, 2002 WL 31973265.

Thomas E Redding, Redding & Associates, Houston, TX, for Morris A Weiner, plaintiff.

Michael D Powell, Dept of Justice, Tax Division, David B Coffin, Dept of Justice, Tax Division, Dallas, TX, for United States of America, defendant.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This tax case raises novel issues relating to limited partners' tax obligations and the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). The case is again before the Court on Plaintiff Morris Weiner's Motion for Reconsideration of Summary Judgment [Doc. # 65] and Weiner's Supplement to Motion for Reconsideration of Summary Judgment [Doc. # 71], to which the United States has responded [Docs. # 68, 74, respectively]. Also before the Court is the United States' Motion to Reconsider Memorandum Opinion, and Brief in Support [Doc. # 73]. Weiner has filed a Response [Doc. # 77], and the United States has replied [Doc. # 78].

Both parties seek reconsideration of certain rulings contained in this Court's Memorandum Opinion issued March 31, 2002 and entered April 2, 2002 ("Memorandum Opinion") [Doc. # 63].[1]

Having considered the parties' briefs, all matters of record, and applicable legal authorities, the Court concludes that Weiner's Motion For Reconsideration, as Supplemented, and the United States' Motion for Reconsideration should be **denied**.

## I. INTRODUCTION

In his original Motion for Reconsideration, Weiner asked the Court to reconsider its ruling that the 1984 tax return of the partnership Travertine Flame Associates ("TFA") was not signed by a partner because AMCOR had power of attorney to sign the return and because discovery was necessary to determine whether AMCOR or Joseph Voyer were partners in TFA at the time Voyer signed the 1984 tax return. Weiner previously raised these issues in his summary judgment motion and in response to the Government's summary judgment motion. Weiner incorrectly asserts that the Court did not consider these arguments. The Court in fact considered and rejected them, as discussed below.[2]

At a conference on May 17, 2002, the Court agreed to withhold ruling on Weiner's Motion for Reconsideration pending production by the United States of the 1984 and 1985 Schedule K–Is for the general partners of TFA.[3] At that conference, the Court further permitted both parties to file additional Motions for Reconsideration. Thereafter, Weiner filed his Supplement to Motion for Reconsideration, and the United States filed its Motion for Reconsideration. The United States' Motion asks the Court to revisit its ruling that

---

1. On this day, the Court is issuing an Amended Memorandum Opinion to correct typographical errors contained in the March 31, 2002 Memorandum Opinion, and to incorporate the corrections contained in the Court's April 8, 2002 Order Denying IRS's § 6621 Motion [Doc. # 64]. The Amended Memorandum Opinion contains no substantive changes to the March 31, 2002 Memorandum Opinion, and thus no further motions for reconsideration may be filed by the parties. The page numbering of the Amended Memorandum Opinion is substantially the same as the original. Therefore, citations herein will be to the Amended Memorandum Opinion.

2. Weiner has presented no new law or evidence to support his power of attorney argument, and the Court stands by its ruling that

there is no authority for allowing a partnership return to be signed by an agent. *See* Amended Memorandum Opinion, 255 F.Supp.2d 624, 648–49.

3. The Court notes that while the parties may have agreed not to conduct discovery until after rulings on summary judgment motions, the Court never ordered a stay of discovery. In addition, Weiner never moved to compel the Government to turn over the information he now contends is crucial to the determination of issues presented in the Government's summary judgment motion. Weiner did move for a protective order to limit discovery on "partnership items" [Doc. # 30], but the Court denied the motion orally on the record at a hearing on October 24, 2001.

collateral estoppel does not apply to the issue of whether the 1984 TFA tax return was signed by a partner, and its ruling that Weiner did not agree in settlement to pay § 6621(c) interest.

Neither party has sought reconsideration of the Court's ruling that it has jurisdiction to determine the statute of limitations issue. In a parallel proceeding, *Kraemer v. United States,* Civil Action No. H–00–2948, in which the taxpayers made a refund claim based on the same statute of limitations arguments Weiner raises here, Magistrate Judge Nancy Johnson dismissed the taxpayers' limitations claims on the ground that the district court lacks subject matter jurisdiction. It is undisputed that a district court has subject matter jurisdiction over refund actions to the extent that the claimed refund is attributable to "nonpartnership" items. 26 U.S.C. § 7422(h). Magistrate Judge Johnson ruled that the statute of limitations for issuance of a Final Partnership Administrative Adjustment ("FPAA") must be determined at the partnership level. On reconsideration, Magistrate Judge Johnson explained that the statute of limitations defense is a procedural challenge to the "partnership item" of the IRS's proposed adjustments to the partnership return called for by the FPAA. Thus, although the statute of limitations is found in subtitle F of the Internal Revenue Code, plaintiff sought a refund based on adjustments called for by the FPAA. Thus, Magistrate Judge Johnson concluded that the taxpayers' limitations claim was an action was for a refund attributable to a partnership item and was outside the district court's jurisdiction. *See* Order dated June 7, 2002 [Doc. # 49 in Civil Action No. H–00–2948]. The Court recognizes the jurisdictional issue is a threshold one. Magistrate Judge

Johnson's opinion is well-reasoned, although unprecedented in its approach. Neither party in the case at bar has asserted the arguments Magistrate Judge Johnson adopted in *Kraemer,* and neither has sought reconsideration of the this Court's ruling that jurisdiction exists over the limitations-based refund claim. Because Magistrate Judge Johnson's approach relies on analysis of TEFRA and the Internal Revenue Code not yet squarely adopted by any appellate court, because the Fifth Circuit's TEFRA precedent does not address the issue, because this case raises numerous legal questions about tax obligations at least 16 years old, and because resolution of these issues affects many related pending and potential cases, the Court will not revisit its jurisdictional ruling. The Court accordingly exercises jurisdiction over the statute of limitations issue based on the analysis in its Amended Memorandum Opinion, at 632–39.

## II. *ANALYSIS OF WEINER'S MOTION*

This Court held in its Memorandum Opinion that the IRS's assessment for the 1984 tax year was not time-barred because the time period for issuance of an FPAA did not begin to run upon the filing of the TFA 1984 tax return because that return had not been signed by a partner as required by Internal Revenue Code § 6063.[4] *See* Amended Memorandum Opinion, at 645–52.

In his original Motion for Reconsideration, Weiner cited Fred Behrens's testimony that "in many cases" AMCOR acquired partnership interests within the year after the partnership was formed. However, Behrens offered no testimony as to when AMCOR actually acquired a partnership interest in TFA. Nor did he identify any

---

4. The statutory framework under TEFRA requires notification by the IRS to individual partners of any adjustments to partnership

items reported in the partnership return. *See* Amended Memorandum Opinion, at 630–32.

specific documents that would answer the question. Behrens testimony offers no assistance in determining when AMCOR became a TFA partner.

In his Supplement, Weiner relies on the recently produced 1984 and 1985 Schedule K–1s for TFA general partners Behrens, Wright, and Schreiber, and the 1985 Schedule K–1 for AMCOR. The 1985 Schedule K–1 for AMCOR[5] reports that AMCOR's partnership percentage was .500000% *both* "before decrease or termination" (Column D(i)), and at the end of the year (Column D(ii)). On the 1984 Schedule K–1s for general partners Behrens, Wright, and Schreiber,[6] Column D(i) is blank, and Column D(ii) specifies that each had a partnership interest at the end of the year of .333300%. The 1985 Schedule K–1s for Behrens, Wright, and Schreiber,[7] reflect in that each had a .166600% interest "before decrease or termination" (Column D(i)) and that each had a .166600% interest at the end of the year (Column D(ii)). Weiner argues that the combination of these documents indicates that AMCOR was a partner at all times during 1985. The Court finds Weiner's argument unpersuasive.

■ It is undisputed that AMCOR was not a partner in 1984. Therefore, it is evident that AMCOR became a partner in 1985. Weiner contends that the entry in the AMCOR 1985 Schedule K–1 in Column D(i), showing AMCOR's partnership percentage at .500000%, proves that it was a

partner as of January 1, 1985. The Court disagrees. This entry does not comport with the 1985 Instructions for Schedule K–1 (Form 1065).[8] Column D(i) does not ask for the partnership percentage at the beginning of the year; it asks for the partnership percentage *prior to any decrease or termination* during the year. Under Weiner's theory, Column D(i) should have been zero or left blank, as it was in the 1984 Schedule K–1s for Behrens, Wright, and Schreiber. The listing of a partnership percentage for AMCOR in Column D(i) of its 1985 Schedule K–1 is not evidence that AMCOR was a TFA partner on January 1, 1985.[9] *See Ehrensperger v. Commissioner,* 67 T.C.M. (CCH) 3106, 3108 (1994) (finding Schedule K–1s insufficient to meet taxpayers burden to establish his share of liabilities in partnerships).

Weiner next argues that his position that AMCOR became a partner as of January 1, 1985, is supported by the items of income reported on the Schedule K–1s. Each general partner reported income on his individual Schedule K–1 in accordance with his partnership percentage. The income allocation in these Schedules is not *pro-rated,* however, to reflect that AMCOR did not obtain its partnership interest until December 1985. Because TFA was prohibited by the Internal Revenue Code from retroactively allocating income or loss to AMCOR, Weiner argues, AMCOR must have purchased its interest on January 1, 1985.[10] The Court finds that

---

**5.** Exhibit A to Weiner's Supplement.

**6.** Exhibits B–D to Weiner's Supplement.

**7.** Exhibits E–G to Weiner's Supplement.

**8.** *See* Exhibit 2 to United States' Response, at 10.

**9.** The unreliability of the K–1s is further illustrated by the 1985 Schedule K–1s of Behrens, Wright, and Schreiber. Even under Weiner's theory, those Schedules should have listed

.333300% in Column D(i) and .166600% in Column D(ii) to indicate the change in their partnership percentages. To adopt Weiner's conclusion, the Court would have to place total reliance on the Schedules K–1s *and* conclude that a change effective as of January 1, 1985 did not take place *during* 1985.

**10.** *See Ogden v. Commissioner,* 788 F.2d 252 (5th Cir.1986); *Katz v. Commissioner,* 116 T.C. 5, 2001 WL 30538 (2001); *Johnsen v. Commissioner,* 84 T.C. 344, 1985 WL 15302 (1985).

the AMCOR Schedule K–1 may be some evidence as to how, long after the fact, the general partners decided to allocate partners' income, but is not proof of the legal accuracy of that *post hoc* allocation.[11]

Finally, Weiner extrapolates that because AMCOR was the general partner with the largest profit percentage interest at the close of the 1985 taxable year, it was the 1985 tax matters partner for TFA. Even if that is true as to the 1985 taxable year, it is not true as to the 1984 taxable year at issue. AMCOR's status as of the end of 1985 does not answer the question as to whether AMCOR was authorized to sign the 1984 tax return in January 1985.

Reliance on AMCOR's Schedule K–1 for 1985, which was prepared some time in 1986 long after the events and calendar years at issue, ignores the parties' partnership documentation, as well as the parties' December 5, 1985 letter agreement, and the amended Certificate of Limited Partnership filed in December 1985. Weiner had complete access to the general partners of TFA during discovery in this case and should have known that the status of AMCOR as a partner in TFA would be an important issue in his case. Yet, he has presented no evidence that establishes that AMCOR became a partner of TFA on January 1, 1985. The assumptions and reasoning Weiner suggests regarding the Schedule K–1s and AMCOR's partnership status, even if amounting to a scintilla of evidence, simply are too attenuated to support a verdict in his favor. Weiner has failed to establish a genuine fact issue that AMCOR was partner in TFA on January 30, 1985, the date Voyer signed the 1984

tax return, in light of the substantial evidence supporting the Court's conclusion that AMCOR became a partner in December, 1985. *See* Amended Memorandum Opinion, at 632–33, 649–51. Weiner has presented no probative evidence or argument in his Motion for Reconsideration or Supplement to Motion for Reconsideration that warrants any change in that decision.

### III. *ANALYSIS OF UNITED STATES' MOTION*

In its Memorandum Opinion, this Court declined to apply collateral estoppel to bar Weiner from litigating whether the FPAAs for TFA for tax years 1984 and 1985 were time-barred because the issues in the Tax Court and the current case are not identical in all respects. Amended Memorandum Opinion, at 640–45. This Court further held that Weiner did not agree to pay § 6621(c) interest in his settlement agreement. *Id.* at 654–56. In its Motion to Reconsider, the United States first argues that the Court erred in relying on the restrictive approach of *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), in declining to apply collateral estoppel in this case. Second, the United States argues that the Court mistakenly concluded that the Summary of the AMCOR Appeals Settlement Offer ("SAASO") was not part of the settlement, and thus erred in denying summary judgment on the United States' claim for § 6621(c) interest.

---

**11.** The partnership's tax records are evidence of what was actually reported to the IRS. However, the Court does not consider them meaningful evidence on the ultimate question of whether, and when, the legal prerequisites for partnership of AMCOR were met. Weiner contends that the United States acknowledged the 1985 allocations were proper by agreeing in the Tax Court case that there should be no change in TFA's partnership items for 1985. The Court is unpersuaded. The fact that the IRS did not contest the allocation in the Tax Court case is not the equivalent of an admission as to the date AMCOR became a partner in TFA.

## A. *Sunnen is Still Binding Precedent for This Court*

The United States argues that the collateral estoppel doctrine expressed in *Sunnen* has been supplanted by *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), in which the Supreme Court determined that *Sunnen*'s "doctrine of separable facts" did not bar collateral estoppel where the factual differences in issue were "too inconsequential to warrant relitigation" and were not capable of "altering facts essential to the judgment." *Montana,* 440 U.S. at 160–61, 99 S.Ct. 970.

The Court first notes that the United States did not raise this issue in its summary judgment briefing. To the contrary, the United States represented to the Court that *Sunnen* governed the collateral estoppel analysis:

> Indeed, plaintiff is correct when asserting that collateral estoppel is narrowly applied in tax cases. The limitation was set out by the Supreme Court in *Commissioner of Internal Revenue v. Sunnen:* '[Collateral estoppel] must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'

Reply on United States' Cross–Motion for Partial Summary Judgment Based on Statute of Limitations for 1985 [Doc. # 47],[12] at 2 (citing *Sunnen,* 333 U.S. at 599–600, 68 S.Ct. 715). Moreover, the United States did not cite *Montana* at all in support of its collateral estoppel argument. Obviously, *Montana* is not new law of which the United States could only have become aware since filing its summary

judgment briefing. Therefore, the United States waived its argument that *Sunnen* does not apply. Nevertheless, the Court has considered the United States' position and finds it unpersuasive on the merits.

The United States' argument overlooks a critical distinction between *Sunnen* and *Montana* and its progeny: *Montana* is not a traditional tax case. In *Montana,* a contractor on a public works project brought suit in Montana state court challenging the constitutionality of a Montana state gross receipts tax imposed upon contractors of public, but not private, construction projects. *Montana,* 440 U.S. at 150–51, 99 S.Ct. 970. The litigation was directed and financed by the United States. *Id.* at 151, 99 S.Ct. 970. While the state case was pending, the United States initiated a challenge to the same statute in the United States District Court for the District of Montana. *Id.* By agreement, the federal case was stayed pending resolution of the state-court litigation. *Id.* The Montana Supreme Court found the tax constitutional. *Id.* The contractor then filed a second state-court case seeking a tax refund. The Montana Supreme Court ruled that the contractor's second state court suit was in all material respects identical to his first state court action, and dismissed the second case. *Id.* After the second Montana Supreme Court decision, the United States District Court heard the United States' case and, finding it was not bound by the Montana Supreme Court decision, struck down the tax as violative of the Supremacy Clause. *Id.* at 152, 99 S.Ct. 970. On appeal by the State of Montana, the United States Supreme Court found "that the constitutional question presented by this appeal was determined adversely to the United States in a

---

**12.** Because the arguments the United States wished to present were identical, the Reply as to the 1985 statute of limitations issue was incorporated into the Reply on United States'

Cross–Motion for Partial Summary Judgment Based on Statute of Limitations for 1984 [Doc. # 46].

prior state proceeding" and reversed the district court's ruling on grounds of collateral estoppel without reaching the merits. *Id.* at 152–53, 99 S.Ct. 970. The Supreme Court stated "[a] review of the record in [the first Montana case] dispels any doubt that the plaintiff there raised and the Montana Supreme Court there decided *the precise constitutional claim* that the United States advances here." *Id.* at 156, 99 S.Ct. 970 (emphasis added). In fact, the United States' amended complaint tracked almost verbatim the language of the plaintiff's complaint in the state court action. *Id.*

The United States argued, citing *Sunnen*, that collateral estoppel applies only when "the controlling facts and applicable legal rules remain unchanged." *Id.* at 158, 99 S.Ct. 970. The United States also asserted that the facts in the federal case varied from the prior state court case because an allegedly critical provision contained in the construction contract at issue in the state court case was not present in the contract at issue in the federal litigation. *Id.* at 158, 99 S.Ct. 970. The Supreme Court agreed with the United States "that changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues," but concluded that the Montana Supreme Court's decision was not predicated on the facts that distinguished the federal and state cases. *Id.* at 159. In other words, the distinct contract provision cited by the United States was irrelevant to the Montana Court's decision. Having found no material difference in the controlling facts, the Supreme Court held that "unless there have been major changes in the law governing intergovernmental tax immunity since [the first Montana suit], the Government's reliance on [*Sunnen*] is misplaced." *Id.* at 161, 99 S.Ct. 970. The Court went on to say that underlying the *Sunnen* decision was a concern, absent from the instant case before it, that modifications in controlling legal principles could render a previous determination inconsistent with prevailing doctrine and result in "inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion." *Id.* at 161, 99 S.Ct. 970 (citing *Sunnen*, 333 U.S. at 599, 68 S.Ct. 715). A close reading of *Montana* thus reveals that the United States' contention that *Montana* overruled *Sunnen's* "separable facts" doctrine vastly overstates the scope of the *Montana* ruling.

■ Since deciding *Montana*, the Supreme Court held that *Sunnen* is "pertinent and indeed is controlling" precedent in a tax case. *Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984) (refusing to apply collateral estoppel in a case involving different tax years, noting "the reason for not applying the collateral-estoppel doctrine in the present case is even stronger than that in *Sunnen*, for here the constitutional analysis of the earlier case is repudiated by this Court's intervening pronouncement"); *cf. United States v. Stauffer Chemical Co.*, 464 U.S. 165, 172 n. 5, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (noting that whatever the applicability of *Sunnen's* strict separable facts test in a tax case, it would not be applied generally in a non-tax case).

In a non-tax case, *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1167 (5th Cir.1981), the Fifth Circuit questioned whether the *Sunnen* separable facts doctrine was still controlling law following *Montana*. The Fifth Circuit in *Hicks* did not wholly reject *Sunnen* in light of *Montana*, but did find that *Montana* limited the applicability of *Sunnen* to situations in which there have been major changes in the law. *Hicks*, 662 F.2d at 1167. In *dicta*, the *Hicks* court opined that "it is likely that the 'separable facts' doctrine of *Sunnen* is a dead letter, since

*Montana* involved separate documents with slightly differing language." [13]  *Id.* However, it is significant that *Hicks* was not a tax case. In a subsequent tax case that presented collateral estoppel issues, *Hibernia Nat'l Bank v. United States,* 740 F.2d 382, 387 (5th Cir.1984), the Fifth Circuit did not cite *Hicks.* Instead, the Court of Appeals relied on *Sunnen* in holding that collateral estoppel must be applied very narrowly in tax cases, and that in order for collateral estoppel to apply, the issues must be "identical in all respects." *Hibernia,* 740 F.2d at 387.

This Court has been presented with no Supreme Court or Fifth Circuit authority

rejecting the *Sunnen* separable facts doctrine in tax cases.[14]  Thus, the Court agrees with Weiner's conclusion in his Response to the United States' Motion to Reconsider that, "[i]n the area of tax law the *Sunnen* separable facts doctrine is very much alive." [15]  The United States' Motion to Reconsider the Court's collateral estoppel ruling is denied.

**B.  *The Parties Did Not Settle the Issue of § 6621(c) Interest***

■ The United States contends that the Court erred in finding that the large, obvious disclaimer at the bottom of the SAASO was meant to apply to the entire SAASO instead of only to the paragraph that followed the disclaimer.[16]  The Court

**13.** Although *Hicks* focused on the language of the contracts at issue in *Montana.* the United States Supreme Court was clear that the language of the contracts at issue was not the basis for the determination of the constitutional question.  *Montana,* 440 U.S. at 159, 99 S.Ct. 970.

**14.** Other circuits analyzing collateral estoppel issues in tax cases have cited *Sunnen* generally on collateral estoppel issues in the years following *Montana.  See, e.g., Greene v. United States,* 79 F.3d 1348, 1352–53 (2d Cir.1996) (relying primarily on *Montana* but citing *Sunnen* for the proposition that "each [tax] year is the origin of a new liability and of a separate cause of action"); *Coleman v. Comm'r of Internal Revenue,* 16 F.3d 821, 830 (7th Cir. 1994) (citing *Sunnen* for the elements of collateral estoppel, including that the issues must be "identical in all respects"); *Carter v. United States,* 973 F.2d 1479, 1483 n. 1 (9th Cir.1992) (noting that although the Supreme Court has repudiated the separable facts doctrine in general, it has suggested that the doctrine may remain applicable in tax cases).

**15.** If the Fifth Circuit were to determine that *Sunnen* is no longer controlling law, the Court, as stated in its Amended Memorandum Opinion, footnote 23, likely would find that the issues are sufficiently identical to warrant application of collateral estoppel.  Weiner makes extensive argument in his Response to the United States' Motion to Reconsider that, even assuming a less restrictive approach to

the identity of issues question, collateral estoppel does not apply because he was not a party, or in privity with a party, to the Tax Court cases, and the Tax Court did not have jurisdiction to decide the limitations question. Weiner made these arguments against collateral estoppel in his summary judgment briefing and the Court addressed them extensively in its decision.  *See* Amended Memorandum Opinion, at 634 n. 12, 640–41, 644–45.  In reaching its decision, the Court addressed the many reasons that support a ruling that Weiner was in privity with the TMP of TFA, but did not decide the question because denial of collateral estoppel was required based on *Sunnen.*  Were it necessary to decide the issue, the Court would likely find privity for the reasons discussed in the Amended Memorandum Opinion.  Therefore, the ruling of the Court granting the United States summary judgment on the 1984 statute of limitations issue would remain unchanged.

**16.** In this regard, the United States has submitted the Second Supplemental Declaration of Jerry Gossett. Exhibit 2 to United States' Motion.  Weiner objects to Gossett's Second Supplemental Declaration as not based on personal knowledge because Gossett swears it is true only "to the best of his knowledge and belief."  The Court **overrules** Weiner's evidentiary objection, but notes that at best the Declaration creates an ambiguity in the SAASO, which would lead the Court to interpret the document against its drafter, the United States.  As stated in the text, the disclaimer is not necessary to the Court's ruling.

stands by its ruling that the SAASO was not a part of the Appeals Settlement Offer. *See* Amended Memorandum Opinion, at 655. However, it is not necessary to rely on the disclaimer to reach the Court's conclusion. In pursuing its settlement with Weiner, the IRS did not make a settlement offer to Weiner. Instead, the IRS sent a settlement package to Weiner that included a Form 870–P(AD), which, if signed and returned by Weiner, would constitute Weiner's settlement offer to the IRS. The IRS then had to accept Weiner's settlement offer in order to consummate the compromise agreement. The SAASO, assuming it was mailed to Weiner as part of the settlement package, which Weiner denies, was not incorporated by Weiner in his settlement offer to the IRS, which the IRS accepted. As stated in the cover letter to the IRS from Weiner's accountant that accompanied Weiner's executed Form 870–P(AD), "the settlement agreements do not apply to penalties." United States' Reply, at 11. The Court therefore rejects the United States' argument that the settlement included the SAASO. The Court next addresses Weiner's argument, made in response to the United States' Motion to Reconsider, that the United States waived its right to collect the § 6621(c) interest.

Although the Form 870–P(AD) did not settle § 6621(c) interest, Weiner clearly was aware that the IRS intended to assess such interest. Again, as stated in the cover letter to the IRS from his accountant, Weiner understood that "the I.R.C. § 6621(c) interest penalty will be assessed." *Id.* The Form 870–P(AD) contained a notice that, if accepted by the IRS, the settlement agreement "may result in an additional tax liability to you plus interest as provided by law." Nonetheless, Weiner argues, as he did in his summary judgment briefing, that the United States should not be allowed to assess § 6621(c) interest because the settlement agreement did not specify any grounds for

the deficiency that support such interest. The Court distinguished the primary cases relied upon by Weiner in support of this argument, *Todd v. Comm'r of Internal Revenue,* 862 F.2d 540 (5th Cir.1988), and *McCrary v. Comm'r of Internal Revenue,* 92 T.C. 827, 1989 WL 35568 (1989), in its Memorandum Opinion. *See* Amended Memorandum Opinion, at 656. Like those cases, the additional cases cited by Weiner are inapposite. *See Copeland v. Comm'r of Internal Revenue,* 290 F.3d 326 (5th Cir.2002); *Law v. Comm'r of Internal Revenue,* 84 T.C. 985, 993, 1985 WL 15356 (1985); *Schachter v. Comm'r of Internal Revenue,* 67 T.C.M.(CCH) 3092 (1994); *Rogers v. Comm'r of Internal Revenue,* 60 T.C.M. (CCH) 1386 (1990). Each of Weiner's cited cases involves a decision by the Tax Court to resolve the deficiency on a basis that did not support imposition of § 6621(c) interest, or in which considerations of justice and equity weighed strongly against imposition of the penalty. In *Schachter,* the case cited by Weiner that is most similar to the case at bar, the taxpayer entered a concession wherein he agreed to a partial disallowance of his disputed loss deduction. Based on that concession, which did not state that the disallowance was due to a tax motivated transaction, the court declined to force the taxpayer to meet his burden of proof to show that the transaction was not tax motivated, all or in part, for the purpose of defeating the IRS's § 6621(c) interest claim because:

> The objectives of administrative efficiency and judicial economy have been well served by the closing agreement and petitioner's concession. Those objectives would not be served by requiring trial on the substantive issues for the sole purpose of determining whether petitioner is liable for 20 percent more interest on the deficiency under section 6621(c).

*Schachter,* 67 T.C.M. at 3094, 1994 WL 263329. The *Schachter* court did not determine that *Todd* or *McCrary,* or any other applicable law, prevented it from allowing the IRS to attempt to prove § 6621(c) interest. The administrative efficiency and judicial economy concerns expressed in *Schachter* are not of paramount importance in the circumstances of the case at bar.[17] At least one other claim survived summary judgment and remains for trial in this case. In addition, unlike in *Schachter* in which the understatement attributable to the taxpayer's deduction was less than $1,000, there is a significant amount of § 6621(c) interest at stake here.

Here, the parties agreed to resolve the deficiency issue without stating a specific grounds for the assessment, and with full knowledge that the IRS intended to assess § 6621(c) interest. There is no authority for precluding the IRS from attempting to prove the applicability of such interest in this case.[18]

## IV. *CONCLUSION AND ORDER*

The parties have not persuaded the Court that its March 31, 2002 Memorandum Opinion (as amended), was factually or legally erroneous. The Court has attempted to address thoroughly each and every issue raised by the parties, whether or not resolution of the issue was necessary to the Court's ultimate ruling. It is in the interests of justice and judicial economy that the parties be able upon appeal to obtain a definitive resolution of this stale case, which has been pending in this Court since early 2000 and involves tax years ending at least sixteen years ago. The Court supplements the rulings contained in the Amended Memorandum Opinion with this Memorandum and Order. It is therefore

**ORDERED** that Weiner's Motion for Reconsideration of Summary Judgment [Doc. # 65] and Supplement to Motion for Reconsideration [Doc. # 71] are **DENIED.** It is further

**ORDERED** that the United States' Motion for Reconsideration [Doc. # 73] is **DENIED.** It is further

**ORDERED** that the Court's Amended Memorandum Opinion is supplemented by this Memorandum and Order. It is further

**ORDERED** that the Court will conduct a telephone conference at **3:00 p.m. on November 26, 2002** to discuss the procedure and schedule for trial of the remaining claims in this case. Plaintiff is instructed to initiate the telephone conference.

---

17. The Court is unmoved by Weiner's argument that judicial efficiency concerns preclude the United States from litigating the § 6621(c) interest issue post-settlement, when it is Weiner who initiated this litigation to contest his deficiency assessment that appeared to have been determined by the settlement.

18. Weiner has not sought reconsideration of this Court's determination that it has jurisdiction to determine the § 6621(c) claim. *See* Amended Memorandum Opinion, at 656–57.